**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SHEA REBECCA BROWN,

Plaintiff,

vs. Case No. 3:13-cv-915-J-34MCR

ROBERT L. JARVIS, JR., individually, et al.,

Defendants.
______________________________________/

**O R D E R**

**THIS CAUSE** is before the Court on Defendant Jarvis's Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum of Law (Doc. 12; Motion) filed on August 21, 2013. In the Motion, Defendant Robert L. Jarvis, Jr. (Jarvis) requests that the Court dismiss Count One of the Complaint and Demand for Jury Trial (Doc. 1; Complaint) pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)). Plaintiff Shea Rebecca Brown (Brown) filed a response in opposition to the Motion on September 9, 2013. See Plaintiff Brown's Response to Defendant Jarvis' Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum of Law (Doc. 27; Response). With leave of Court, see Order (Doc. 37), Jarvis filed a reply on October 16, 2013, see Defendant's Reply to Plaintiff's Response to Defendant Jarvis' Motion to Dismiss Plaintiff's Complaint (Doc. 40; Reply). Accordingly, the Motion is fully briefed and ripe for review.

## I. Background[1]

The City of Lake City, Florida (Lake City) hired Brown to be a police officer with the Lake City Police Department (LCPD) in or about March 2008. Complaint at 4. On or about April 23, 2009, Brown was on duty as a patrol officer. Id. LCPD Officer Jason Golub (Officer Golub), who was also on duty, was dispatched to transport a detainee, King David Bradley (Bradley), to jail for a violation of probation. Id. at 4-5. Prior to placing Bradley in the patrol vehicle, Officer Golub searched him and discovered a misdemeanor amount of marijuana. Id. at 5. Because Golub's shift was ending, he contacted Brown to take over Bradley's transfer. Id. at 4, 5. According to Brown, Officer Golub told her "that the violation of probation case was hers and she could do with it what she wanted." Id. at 5.

Brown alleges that per LCPD "custom, practice, and/or policy[,]" she exercised her discretion in declining to charge Bradley with possession of marijuana. Id. Specifically, Brown maintains that the LCPD permitted officers to "use their discretion as to whether or not to charge individuals with possession of misdemeanor amounts of marijuana seized as contraband which had not yet been formally taken as evidence." Id. Brown further alleges that in the event "an officer exercised their discretion not to charge an individual, the custom, practice and/or policy of the [LCPD] mandated that the misdemeanor amount of marijuana be destroyed in the presence of a fellow officer." Id. Brown explains that when she took over Bradley's transfer, the "marijuana was not in an evidence bag nor accompanied by any

[1] In considering the Motion to Dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

paperwork or documentation." Id. As such, Brown "believed the misdemeanor amount of marijuana had not been taken as evidence against Bradley and was merely contraband." Id. Thus, in accordance with the LCPD "custom, practice, and/or policy" and in the presence of LCPD Officer Ivan Useche, Brown "removed the contraband marijuana from her patrol car, placed it on the ground, and destroyed the marijuana by rubbing it into the ground with her boot."[2] Id. at 6.

On or about May 12, 2009, the assistant state attorney in Bradley's case discovered that there was no arrest affidavit for the marijuana found on Bradley. Id. After learning of the absence of an arrest affidavit, Jarvis, the State Attorney for the Third Judicial Circuit, contacted the Florida Department of Law Enforcement (FDLE) to investigate whether there had been an improper disposal of evidence. Id. After completing a full investigation, FDLE Special Agent Robbie Shotwell recommended to Jarvis that no charges be filed against Brown for destruction of evidence. Id. Nevertheless, Jarvis "traveled to [Brown's] former employing agency, a police department in Georgia, to further investigate [Brown]." Id. According to Brown, Jarvis told the department that Brown: "had destroyed evidence and was a corrupt officer," had "'smoked' the marijuana," and had "engaged in a sexual relationship with another officer." Id. at 6-7. Following this investigation, on July 6, 2009, "Jarvis personally filed an Information against [Brown] for tampering with evidence in violation of Florida Statute § 918.13 and issued a capias for the arrest of [Brown]." Id. at 7. Learning about the capias the next day, Brown turned herself in to the Columbia County jail,

---

[2] Brown asserts that "[a]t all times relevant, other officers similarly situated to Plaintiff destroyed non-evidence contraband as per [LCPD's] custom, practice, and/or policy." Complaint at 6.

and was arrested. Id. Brown was placed on administrative leave without pay while the criminal charges were pending. Id. On or about August 31, 2009, the LCPD terminated Brown's employment, labeling her as "unprofessional, dishonest, poorly performing, and/or a drug using police officer." Id. at 8. The criminal charges against Brown were later dismissed on or about September 7, 2010. Id.

On July 30, 2013, Brown initiated this action by filing a five-count Complaint against Jarvis, Individually; Jeff Seigmeister, in his official capacity as State Attorney for the Third Judicial Circuit of Florida; Rudolph Davis (Davis), Individually; Carlton Tunsil (Tunsil), Individually; and the City of Lake City, Florida (Lake City).[3] See Complaint at 1. In Count One of the Complaint, Brown asserts a claim under 42 U.S.C. § 1983 against Jarvis, individually, for malicious prosecution in violation of her Fourth and Fourteenth Amendment rights. Id. at 8. In support of this claim, Brown alleges that Jarvis, with malice and without probable cause, "instituted, commenced, and/or continued with the prosecution against Plaintiff Brown." Id. at 8. Brown further contends that Jarvis acted in "willful, wanton, callous, and knowing disregard of the clearly established rights of Plaintiff to be free from

[3] The Court granted Jarvis's motion to stay discovery on Count One until the Court rules on the instant Motion. See Defendant Jarvis's Motion to Stay all Proceedings until the Court Rules Upon Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 24); September 17, 2013 Order (Doc. 31). Brown asserted a § 1983 claim for municipal liability against the State Attorney's Office in Count Two of the Complaint. See Complaint at 9-10. However, upon Brown's Notice of Voluntary Dismissal as to Count Two of the Complaint (Doc. 25), the only count addressed to Defendant Jeff Seigmeister, the Court dismissed Count II of the Complaint and directed the Clerk of Court to terminate Jeff Seigmeister as a defendant in this action. See September 9, 2013 Order (Doc. 26). In Count Three of the Complaint, Brown alleges that Davis discriminated against Brown on the basis of her race and sex in violation of the Equal Protection Clause of the Fourteenth Amendment. See id. at 10-11. In Count Four of the Complaint, Brown asserts that Tunsil also violated her Fourteenth Amendment entitlement to equal rights under the law by intentionally discriminating against her on the basis of race and sex, see id. at 11-12, and in Count Five, Brown asserts a claim under § 1983 for municipal liability against Lake City, see id. at 12-13. In this Order, the Court addresses only Count One.

unreasonable searches and seizures and to due process of law." Id. at 9. As a result, Brown asserts that she has suffered damages. Id.

**II. Standard of Review**

In ruling on a motion to dismiss, brought pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372

F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680-81. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).[4]

**III. Analysis**

To state a claim under § 1983, a plaintiff must plead facts plausibly establishing that she was "deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). As such, Brown's § 1983 malicious prosecution claim requires "proving both (1) the elements of the common-law tort of malicious prosecution; and (2) a violation of [her] Fourth Amendment right to be free from unreasonable seizures." Rehberg v. Paulk, 611 F.3d 828, 847 n.17 (11th Cir. 2010). Here,

---

[4] Prior to Iqbal, Eleventh Circuit precedent instructed that a heightened pleading standard applied in § 1983 actions where "the defendants are individuals who may seek qualified immunity." See Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1179 (11th Cir. 2009). However, in Randall v. Scott, 610 F.3d 701 (11th Cir. 2010), the Eleventh Circuit determined that "[a]fter Iqbal it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." See Randall, 610 F.3d at 707-10. In light of this Eleventh Circuit precedent and because Jarvis does not assert that the heightened pleading standard applies, the Court will apply the standard of review set forth in Twombly and Iqbal. Id. at 710; see also Nettles v. City of Leesburg Police Dep't, 415 F. App'x 116, 120-21 (11th Cir. 2010); but see Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1233 (11th Cir. 2010) (applying the heightened pleading standard post-Iqbal); Keating v. City of Miami, 598 F.3d 753, 762-63 (11th Cir. 2010) (same).

Brown alleges that Jarvis violated her Fourth and Fourteenth Amendment rights "to be free from unreasonable searches and seizures and to due process of law" by initiating and pursuing a prosecution against her, with malice and without probable cause, leading to her arrest. Complaint at 8-9. Jarvis argues that this claim is due to be dismissed because he is entitled to absolute prosecutorial immunity for those actions. Motion at 5. Brown contends that Jarvis is not entitled to such immunity because his actions were investigatory in nature. See Response at 4-5. Because the Court agrees that Brown's sole claim against Jarvis is barred by prosecutorial immunity, the Court will not address the parties' remaining arguments.

A prosecutor is entitled to absolute immunity for all actions performed within the scope of the prosecutor's role as a government advocate. Rivera v. Leal, 359 F.3d 1350, 1353 (11th Cir. 2004) (citing Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)); see also Smith v. Shorstein, 217 F. App'x 877, 880 (11th Cir. 2007). In determining whether a prosecutor's challenged actions were taken in the scope of his role as a state advocate, the Court examines the function and nature of the act, not merely the official title of the actor who performed it. Buckley, 509 U.S. at 269. Absolute prosecutorial immunity encompasses all acts taken by a prosecutor in performing his role as a government advocate, including "the initiation and pursuit of criminal prosecution, and most appearances before the court, including examining witnesses and presenting evidence." Rivera, 359 F.3d at 1353 (internal citations omitted); see also Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999) (finding that absolute immunity extends to a prosecutor's acts performed "in preparing for the initiation of judicial proceedings for trial, and which occur in the course of his role as an

advocate for the State" (internal quotations omitted)). Indeed, a prosecutor is absolutely immune to suits for money damages unless the acts or omissions giving rise to the plaintiff's claim are outside the "scope and territorial jurisdiction of his office." Elder v. Athens-Clarke Cnty., Ga., 54 F.3d 694, 695 (11th Cir. 1995); see also Smith, 217 F. App'x at 880. However, "[i]f a prosecutor functions in a capacity unrelated to his role as an advocate for the state, he is not protected by absolute immunity but enjoys only qualified immunity." Rehberg, 611 F.3d at 838. Thus, "[a] prosecutor is not entitled to absolute immunity when he 'performs the investigative functions normally performed by a detective or police officer.'" Id. (quoting Buckley, 509 U.S. at 273).

Here, Brown alleges that her constitutional rights were violated when she was arrested as a result of Jarvis's initiation and pursuit of a criminal case against her. See Complaint at 8. Specifically, Brown contends that when Jarvis filed the Information and issued the capias against her, resulting in her arrest, he violated her rights under the Fourth Amendment to be free from unreasonable seizures. See Response at 10. Thus, the acts giving rise to Brown's claim fall squarely within the scope of Jarvis's role as a government advocate for which Jarvis is entitled to absolute immunity.[5] See Rehberg, 611 F.3d at 837.

---

[5] The Court notes that under Florida law, "[u]pon the filing of an information, the clerk of the circuit court shall docket the information and shall, without leave or order of the court first being had and obtained, issue a capias for the arrest of the person charged . . . ." See Fla. Stat. § 932.48. Brown does not allege that Jarvis personally attested to the truth of the averments in his filings or that he otherwise acted in the capacity of a complaining witness. Compare Kalina v. Fletcher, 522 U.S. 118, 128-39 (1997) (finding absolute immunity for preparation and filing of information and motion for arrest warrant, but no absolute immunity for prosecutor's act in personally attesting to the truth of the averments in a "Certification for Determination of Probable Cause") with Holden v. Sticher, 427 F. App'x 749, 753 (11th Cir. 2011) (finding prosecutor entitled to absolute immunity for signing a bench warrant because the "paperwork in question" was "nearly entirely procedural"). Indeed, Brown specifically alleges that Jarvis did not "include a complaint affidavit with the capias." See Complaint at 7.

Indeed, regardless of whether Jarvis acted with malicious intent or without probable cause, he is absolutely immune from suit for his actions in initiating the prosecution against Brown. See Jackson v. Capraun, 534 F. App'x 854, 859 (11th Cir. 2013) ("[The prosecutor] is entitled to absolute immunity for initiating the prosecution even if he did it with malicious intent."); Rehberg, 611 F.3d at 849 ("[The prosecutor's] alleged decision to prosecute [plaintiff], even if made without probable cause and even if caused solely by . . . his unconstitutional retaliatory animus, is protected by absolute immunity."); Holden, 427 F. App'x at 753; Hart v. Hodges, 587 F.3d 1288, 1297 (11th Cir. 2009); Henzel v. Gerstein, 608 F.2d 654, 657 (5th Cir. 1979).[6]

Brown attempts to avoid the application of prosecutorial immunity by arguing that Jarvis's actions were investigatory in nature. In support, Brown alleges that Jarvis traveled to Brown's former police department in Georgia "in an investigative attempt to elicit information to prosecute Plaintiff." See Response at 5. While there, Jarvis allegedly stated that Brown was a corrupt officer who destroyed evidence and engaged in a sexual relationship with another officer. Id. Brown is correct that Jarvis does not enjoy absolute immunity for this conduct. See Rehberg, 611 F.3d at 838 ("A prosecutor is not entitled to absolute immunity when he 'performs the investigative functions normally performed by a detective or police officer.'" (quoting Buckley, 509 U.S. at 273)); Rowe v. City of Ft. Lauderdale, 279 F.3d 1271, 1280 (11th Cir. 2002). However, Brown's reliance on these investigatory actions is unavailing. Brown cannot avoid the application of absolute immunity

[6]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

to her claim because Brown does not allege that Jarvis's investigation itself deprived her of any constitutional rights. Thus, while Jarvis may not be entitled to absolute immunity for his actions in investigating Brown prior to initiating the prosecution against her, those actions do not form the basis of Brown's § 1983 claim.

Moreover, "[w]hen a prosecutor steps out of the role of advocate and into the role of investigator . . . he is performing a discretionary governmental function, and thus may be entitled to qualified immunity." Rowe, 279 F.3d at 1280. "Qualified immunity shields government officials who perform discretionary governmental functions from civil liability so long as their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Thus, by assuming the role of investigator, Jarvis lost the protection of absolute immunity but "took on a qualified immunity that protected all of his actions in performing that role that did not violate clearly established rights of which a reasonable person in his position would have known." Id. at 1281. To the extent Brown attempts to premise her § 1983 claim on Jarvis's investigation of her, Brown fails to demonstrate how this conduct violated any of Brown's clearly established constitutional rights. Cf. Rehberg, 611 F.3d at 842 (finding no absolute immunity for issuing subpoenas to telephone company, but qualified immunity applied because no constitutional right of privacy in the phone and fax information subpoenaed); Rowe, 279 F.3d at 1280-81 (finding no absolute immunity for prosecutor's participation in search, but applying qualified immunity because the most the prosecutor did while acting as an investigator was fail to act in the face of knowledge that an officer fabricated evidence, conduct which did not violate any

clearly established federal rights). Because "[t]he initiation of a criminal investigation in and of itself does not implicate a federal constitutional right," the Court finds that Jarvis's conduct in further investigating Brown did not violate any of her clearly established constitutional rights. See Rehberg, 611 F.3d at 850 n.24; Thompson v. Hall, 426 F. App'x 855, 858 (11th Cir. 2011). Therefore, even if Brown's § 1983 claim is based on Jarvis's investigation, Jarvis is entitled to qualified immunity for that conduct.

In sum, the only constitutional violation set forth in Count One is the unlawful seizure that occurred when Brown was allegedly arrested without probable cause as a result of Jarvis's decision to file an information against her. See Complaint at 8-9. As such, it was only while he was acting in the role of a prosecutor that Jarvis allegedly did anything that violated Brown's constitutional rights. "For those actions taken in the prosecutor's role, however, [Jarvis] is entitled to absolute immunity from liability." Rowe, 279 F.3d at 1281. Thus, the Court concludes that Brown fails to state a claim against Jarvis upon which relief can be granted and therefore, the Motion to Dismiss is due to be granted.

Accordingly, it is

**ORDERED**:

1. Defendant Jarvis's Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum of Law (Doc. 12) is **GRANTED**.

2. Count One of the Complaint is **DISMISSED**.

3. The Clerk of the Court is directed to terminate Defendant Robert L. Jarvis, Jr. from the Court docket.

**DONE and ORDERED** at Jacksonville, Florida, this 28th day of March, 2014.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record