**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SHEA REBECCA BROWN,

           Plaintiff,

vs.                                     Case No.  3:13-cv-915-J-34MCR

ROBERT L. JARVIS, JR., individually, et al.,

           Defendants.
_____/

## O R D E R

**THIS CAUSE** is before the Court on Defendant Rudolph Davis's Motion to Dismiss (Doc. No. 21; Motion) filed on September 3, 2013.  Plaintiff filed a response opposing the Motion on September 27, 2013.  See Plaintiff's Response to Defendant Davis'[s] Motion to Dismiss (Doc. 21) (Doc. No. 34; Response).  With leave of Court, see Order (Doc. No. 37), Defendant filed a reply on October 8, 2013, see Defendant Rudolph Davis's Reply to Plaintiff's Response in Opposition to his Motion to Dismiss (Doc. No. 38; Reply). Accordingly, the Motion is ripe for review.

    **I.**    **Background**[1]

    Shea Rebecca Brown ("Brown" or "Plaintiff") initiated this action by filing a five-count Complaint and Demand for Jury Trial (Doc. No. 1; Complaint) against Robert L. Jarvis, Jr. ("Jarvis"), Individually; Jeff Seigmeister, in his official capacity as State Attorney for the Third

---

[1] In considering the Motion to Dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).  As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

Judicial Circuit of Florida[2]; Rudolph Davis ("Davis" or "Defendant"), Individually; Carlton Tunsil ("Tunsil"), Individually; and the City of Lake City, Florida ("Lake City").

Lake City hired Brown to be a police officer with the Lake City Police Department ("LCPD") in or about March 2008. Complaint at 4. Defendant Davis disapproved of Brown's hiring because she was a Caucasian female. Id. Indeed, he "told fellow police officers that he did not like women police officers and felt as though women had no business in the police field." Id. Brown alleges "[u]pon information and belief," that "Davis told one of his African-American friends that he could have the job [for which Brown was hired]." Id.

In June 2009, LCPD Chief Carrie Laxton resigned, leaving Tunsil to become acting LCPD Chief. Id. In April 2009, Davis had been promoted to the rank of captain of the LCPD, making him LCPD's highest ranking police officer while Tunsil was acting police chief. Id. According to Brown, "Defendant Davis effectively ran the department during Tunsil's tenure." Id.

On or about April 23, 2009, Brown was on duty as a patrol officer. Id. LCPD Officer Jason Golub ("Officer Golub"), who was also on duty, was dispatched to transport a detainee, King David Bradley ("Bradley"), to jail for a violation of probation. Id. at 4-5. Prior to placing Bradley in the patrol vehicle, Officer Golub searched him and discovered a misdemeanor amount of marijuana. Id. at 5. Because Golub's shift was ending, he contacted Brown to take over Bradley's transfer. Id. at 4, 5. According to Brown, Officer

---

[2] Upon Brown's Notice of Voluntary Dismissal as to Count Two of the Complaint (Doc. No. 25), the only count addressed to Defendant Jeff Seigmeister, the Court dismissed Count II of the Complaint and directed the Clerk of Court to terminate Jeff Seigmeister as a defendant in this action. See September 9, 2013 Order (Doc. No. 26).

Golub told her "that the violation of probation case was hers and she could do with it what she wanted." Id. at 5.  Accordingly, Brown alleges that per LCPD "custom, practice, and/or policy[,]"[3] she exercised her discretion in declining to charge Bradley with possession of marijuana.[4] Id.  As such, in accordance with LCPD "custom, practice, and/or policy"[5] and in the presence of LCPD Officer Ivan Useche, Brown "removed the contraband marijuana from her patrol car, placed it on the ground, and destroyed the marijuana by rubbing it into the ground with her boot."[6] Id. at 6.

On or about May 12, 2009, the assistant state attorney in Bradley's case discovered that there was no arrest affidavit for the marijuana found on Bradley.  Id.  After learning of the absence of an arrest affidavit, Jarvis, the State Attorney for the Third Judicial Circuit, contacted the Florida Department of Law Enforcement (FDLE) to investigate whether there had been an improper disposal of evidence.  Id.  After completing a full investigation, FDLE Special Agent Robbie Shotwell recommended to Jarvis that no charges be filed against Plaintiff for destruction of evidence.  Id.  Nevertheless, after conducting his own

---

[3] Brown asserts that the LCPD permitted officers to "use their discretion as to whether or not to charge individuals with possession of misdemeanor amounts of marijuana seized as contraband which had not yet been formally taken as evidence."  Complaint at 5.

[4] Brown explains that when she took over Bradley's transfer, the "marijuana was not in an evidence bag nor accompanied by any paperwork or documentation."  Complaint at 5.  As such, Brown "believed the misdemeanor amount of marijuana had not been taken as evidence against Bradley and was merely contraband."  Id.

[5] In the event "an officer exercised their discretion not to charge an individual, the custom, practice and/or policy of the [LCPD] mandated that the misdemeanor amount of marijuana be destroyed in the presence of a fellow officer."  Complaint at 5.

[6] Brown asserts that "[a]t all times relevant, other officers similarly situated to Plaintiff destroyed non-evidence contraband as per [LCPD's] custom, practice, and/or policy."  Complaint at 6.

investigation,[7] on July 6, 2009, "Defendant Jarvis personally filed an Information against Plaintiff for tampering with evidence in violation of Florida Statute § 918.13 and issued a capias for the arrest of Plaintiff." Id. at 7.  Learning about the capias the next day, Brown turned herself into the Columbia County jail, and was arrested.  Id.  Brown was placed on administrative leave without pay while the criminal charges were pending.[8]  Id.

On July 10, 2009, Tunsil ordered an internal affairs investigation of Brown for "neglect of duty, recovered property/evidentiary material, on/off duty conduct, untruthfulness, and felonies."  Id.  Additionally, on July 16, 2009, and July 22, 2009, based on complaints by Davis, LCPD undertook two more internal affairs investigations of Brown.  Id.  The first such investigation concerned care of equipment and department property; and the second concerned Brown's untruthfulness and insubordination.  Id.  On or about August 31, 2009, LCPD terminated Brown's employment, labeling her as "unprofessional, dishonest, poorly performing, and/or a drug using police officer."  Id. at 8.

Brown contends that "[a]ll internal affairs investigations were instigated, investigated, and determined as a pretext for terminating her."  Id. at 7-8.  Additionally, she alleges that "[d]uring all times relevant, Defendant Davis made racially insensitive remarks directed" to her.  Id. at 8.  Additionally, according to Brown, after LCPD terminated Brown's employment, LCPD hired an African-American officer as Brown's replacement.  Id.

---

[7] According to Brown, Jarvis's investigation involved Jarvis visiting Brown's former employer, a police department in Georgia.  Complaint at 6.

[8] According to Brown, on or about September 7, 2010, the criminal charges against her were dismissed.  Complaint at 8.

Based on these alleged facts, in Count Three of the Complaint, Brown asserts a claim against Davis, individually, under 42 U.S.C. § 1983 for intentional discrimination on the basis of race and sex in violation of the Equal Protection Clause.  Id. at 10-11. Specifically, as to this claim, Brown asserts that she "is a member of a protected class, female and Caucasian" and that "Defendant Davis treated non-female, non-Caucasian similarly-situated employees more favorably than Plaintiff Brown." Id. at 10.  Brown further alleges that "[t]hrough Defendant Davis'[s] actions and treatment of Plaintiff, Defendant Davis intended to discriminate against Plaintiff on the basis of Plaintiff's race and sex," and that "Defendant Davis'[s] actions were done with malice and/or reckless indifference towards Plaintiff's Fourteenth Amendment rights." Id. at 11.  As a result, Brown asserts that she has suffered damages.  Id.[9]

## II.    Standard of Review

In ruling on a motion to dismiss, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)), the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009);  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  In addition, all reasonable inferences should be

---

[9] In Count One of the Complaint, Brown asserts that "Defendant Skip Jarvis'[s] malicious prosecution of Plaintiff deprived Plaintiff of her Fourth and Fourteenth Amendment rights."  Complaint at 8-9.  The Court granted Jarvis's motion to stay discovery on Count One until the Court rules upon Jarvis's motion to dismiss. See Defendant Jarvis's Motion to Stay all Proceedings until the Court Rules Upon Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. No. 24); September 17, 2013 Order (Doc. No. 31).  In Count Four of the Complaint, Brown asserts that Tunsil violated her Fourteenth Amendment entitlement to equal rights under the law by intentionally discriminating against her on the basis of race and sex, see id. at 11-12, and in Count Five, Brown asserts a claim under § 1983 for municipal liability against Lake City, see id. at 12-13.  In this Order, the Court addresses only Count Three.

drawn in favor of the plaintiff.  See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).  Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

    A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth."  See Iqbal, 556 U.S. at 678, 680-81.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678

(quoting Twombly, 550 U.S. at 570).[10]

### III.   Analysis

To state a claim under § 1983, a plaintiff must plead facts plausibly establishing that

she was "deprived of a right secured by the Constitution or laws of the United States and

that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins.

Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).   Here, Brown alleges that Davis violated her

"Fourteenth Amendment entitlement to equal rights under the law."  Complaint at ¶ 68.  "The

Equal Protection Clause ensures a right to be free from intentional discrimination based

upon race . . . and gender[.]"  Williams v. Consol. City of Jacksonville, 341 F.3d 1261, 1268

(11th Cir. 2003) (citations and footnote omitted).   As such, the Eleventh Circuit Court of

Appeals has "recognized an equal protection right to be free from employment

discrimination, . . . and [has] found various race-and gender-based employment decisions

by public officials, including those concerning discipline, promotions, transfers,

reclassifications, and termination, in violation of that constitutional right[.]" Id. (citations

omitted).   Additionally, Eleventh Circuit precedent establishes that a "person acts under

---

[10] Prior to Iqbal, Eleventh Circuit precedent instructed that a heightened pleading standard applied in § 1983 actions where "the defendants are individuals who may seek qualified immunity." See Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1179 (11th Cir. 2009).  However, in Randall v. Scott, 610 F.3d 701 (11th Cir. 2010), the Eleventh Circuit determined that "[a]fter Iqbal it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." See Randall, 610 F.3d at 707-10.  In light of this Eleventh Circuit precedent and because Davis does not assert that the heightened pleading standard applies, the Court will apply the standard of review set forth in Twombly and Iqbal. Id. at 710; see also Nettles v. City of Leesburg Police Dep't, 415 F. App'x 116, 120-21 (11th Cir. 2010); but see Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1233 (11th Cir. 2010) (applying the heightened pleading standard post-Iqbal); Keating v. City of Miami, 598 F.3d 753, 762-63 (11th Cir. 2010) (same).

color of state law when he acts with authority possessed by virtue of his employment with the state." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001) (citation omitted).

"[L]iability for an Equal Protection Clause violation under § 1983 requires personal involvement by a defendant, who must act with discriminatory purpose." Reynolds v. Barrett, 685 F.3d 193, 204 (2d Cir. 2012) (citing Iqbal, 556 U.S. at 676). A prima facie case of discrimination may be shown by: (1) statistical proof of a pattern of discrimination; (2) direct evidence of discrimination; or (3) circumstantial evidence of discrimination[11]. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008); Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997). However, a plaintiff need not allege facts sufficient to make out a prima facie case in order to survive a motion to dismiss. Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) (citing Swierkiewicz, 534 U.S. at 511). Rather, the plaintiff "must provide, 'enough factual matter (taken as true) to suggest' intentional race [or gender] discrimination." Id. (citing Twombly, 127 S.Ct. at 1965).

---

[11] If a plaintiff relies on circumstantial evidence to prove discrimination, the Court applies the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1255 (11th Cir. 2012). Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing that "(1) she is a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) employment or disciplinary policies were differently applied to her." Id.; Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1314 (11th Cir. 1994). However, the Court in McDonnell Douglas recognized that more than one formulation of the elements of a prima facie case exists. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1275 (11th Cir. 2008) (citing McDonnell Douglas, 411 U.S. at 802 n.13).
     The Court also takes this opportunity to note that "[a]lthough McDonnell Douglas was a Title VII case, Title VII and [§] 1983 claims have the same elements where the claims are based on the same set of facts." Rioux, 520 F.3d at 1275 n.5 (citation omitted).

"[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of <u>respondeat</u> <u>superior</u> or vicarious liability." <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotations and citations omitted). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional violation." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003); <u>see</u> <u>also</u> <u>Keating v. City of Miami</u>, 598 F.3d 753, 762 (11th Cir. 2010).[12]  To establish a causal connection, a plaintiff must allege "'facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" <u>Keating</u>, 598 F.3d at 762 (quoting <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1235 (11th Cir. 2003)).   The requisite causal connection may be established "'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,' . . . or when the supervisor's improper 'custom or policy . . . resulted in deliberate indifference to constitutional rights.'" <u>Gonzalez</u>, 325 F.3d at 1234 (quoting <u>Braddy</u>

_____

[12] The Court recognizes that Brown disputes the relevancy of the supervisory liability theory. <u>See</u> Response at 8.  Indeed, Brown's claim against Davis seems to allege liability based only on Davis's personal participation in the unconstitutional conduct.  <u>See</u> Complaint at 10-11 ("Through Davis'[s] actions and treatment of Plaintiff, Defendant Davis intended to discriminate against Plaintiff on the basis of Plaintiff's race and sex."); <u>see also</u> Response at 8.  Therefore, Brown does not appear to assert liability based on any causal connection between Davis's actions and those of his subordinates.  Case law in the Eleventh Circuit does not distinguish between a defendant's personal participation in the unconstitutional conduct and a defendant's liability based on a causal connection to a subordinate's actions. <u>See</u> <u>Keating</u>, 598 F.3d at 762; <u>Cottone</u>, 326 F.3d at 1360; <u>Hartley</u>, 193 F.3d at 1269.  Rather, both forms of § 1983 liability are considered supervisory liability.  As such, because Brown asserts in the Complaint that Davis was the "captain" and "effectively ran the department during [Defendant] Tunsil's tenure," <u>see</u> Complaint at 4, and because Davis addresses supervisory liability in the Motion, <u>see</u> Motion at 5-7, 9-11, the Court will address the sufficiency of Brown's claim under that framework but will focus its analysis on Davis's personal participation as alleged by Plaintiff.

v. Fla. Dep't of Labor and Emp't Sec., 133 F.3d 797, 802 (11th Cir. 1998); Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)).  "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).  The necessary causal connection may also be demonstrated through "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop then from doing so." Gonzalez, 325 F.3d at 1235.

Upon review of the Complaint, the Court finds that Brown has failed to allege sufficient factual matter to suggest Davis's liability for intentional race or gender discrimination.  First, Brown fails to allege that Davis personally participated in the alleged unconstitutional conduct.  Although Brown alleges, in an entirely conclusory manner, that "[t]hrough Defendant Davis'[s] actions and treatment of Plaintiff, Defendant Davis intended to discriminate against Plaintiff on the basis of Plaintiff's race and sex[,]" Complaint at 11, the Complaint is devoid of any factual allegations that Davis committed an actionable adverse employment action against Brown.  Davis "had the power, right and duty, to hire/appoint officers and suspend or remove/terminate police officers[,]" id. at 3, but Brown does not assert that Davis actually exercised any of these powers with respect to Brown, much less that he terminated her employment.  Rather, Brown alleges that LCPD terminated her employment, and that following her termination, "[LCPD] hired an African[-

]American officer as her replacement." <u>Id.</u> at 8.[13]   Additionally, Brown alleges that Tunsil, the acting chief of the LCPD, had the same ability to suspend, remove, or terminate police officers as Davis.  <u>Id.</u> at 3.  Thus, the Court declines to infer from the Complaint that Davis terminated Brown.

Further, Brown asserts that the LCPD initiated two internal affairs investigations of her based on complaints from Davis, and that these "investigations were instigated, investigated, and determined as a pretext for terminating Plaintiff."  <u>Id.</u> at 7.  However, Brown fails to allege that Davis's complaints were motivated or based on race or gender, or that the investigations actually played a role in her termination or other discipline.  In her Response, Brown's counsel argues that "Defendant Davis used the internal affairs investigation as a means to discriminate against and terminate Plaintiff because of her race and gender."  Response at 6.  However, Brown's Complaint contains no such assertion or facts supporting such a conclusion.  Brown cannot rely on allegations in her Response which are not set forth in her Complaint.  <u>See</u> <u>Huls v. Llabona</u>, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (finding the plaintiff's argument, which he raised for the first time in his response to the defendant's motion to dismiss, improper because the plaintiff did not seek leave to file an amended complaint).  Additionally, although Brown alleges that the internal affairs investigations were pretextual, she does not allege they were a pretext for either race or sex discrimination.

---

[13] In the Response, counsel, citing ¶¶ 47 and 50 of the Complaint, argues that "Defendant Davis, having been delegated final decision making authority, exercised his power to remove/terminate police officers and terminated Plaintiff[.]"  <u>See</u> Response at 3.  However, a review of these paragraphs, indeed of the Complaint in full, discloses no allegations that Davis participated in Plaintiff's termination, only that LCPD terminated Plaintiff, and Davis had the power to do so.

In addition to Brown's failure to allege that Davis personally participated in the alleged unconstitutional conduct, Brown also fails to allege "a causal connection between the actions of a supervising official and the alleged constitutional violation[s]" of his subordinates.  See Cottone, 326 F.3d at 1360.  Brown makes several factual allegations regarding her handling of the marijuana contraband, the subsequent issuance of a capias for her arrest, the arrest itself, and her placement on administrative leave without pay.  See Complaint at 4-7.  However, Brown does not allege that Davis participated in any of these arrests or any causal connection between Davis's actions and these events.  Keating, 598 F.3d at 762.  Indeed, Brown does not allege that Davis had any involvement in these events, directed subordinates involved in these events, or knew that subordinates were acting unlawfully in taking the alleged course of action based on Brown's gender or race.[14]

Brown does allege that she "is a member of a protected class, female and Caucasian" and that "Davis treated non-female, non-Caucasian similarly-situated employees more favorably than" her.  Complaint at 10.  Although this assertion is "crucial" to an equal protection claim, see Flagship Lake Cnty. Dev. No. 5, LLC v. City of Mascotte, Fla.,  No. 5:12–cv–188–Oc–10PRL, 2013 WL 1774944, at *4 (M.D. Fla. April 25, 2013), in the context of this particular Complaint, the allegation "epitomizes speculation and therefore does not amount to a short and plain statement of [her] claim under Rule 8(a)."  Davis, 516 F.3d at 974 (finding that the plaintiffs failed to sufficiently plead individual claims under Title VII

---

[14] Additionally, Brown alleges no facts to suggest "a history of widespread abuse" so as to put Davis "on notice of the need to correct the alleged deprivation," or that Davis's "improper custom or policy . . . resulted in deliberate indifference to constitutional rights[.]"  See Gonzalez, 325 F.3d at 1234 (internal quotations omitted).

where the complaint merely stated that "plaintiffs were 'denied promotions . . . and treated differently than similarly situated white employees solely because of [ ] race'"); see also Uppal v. Hosp. Corp. of Am., 482 F. App'x 394, 396 (11th Cir. 2012) (finding plaintiff's allegation that ""[o]ther similarly situated employees outside Plaintiff's protected classes' engaged in similar misconduct but were not disciplined" insufficient to state a claim of disparate treatment); cf. Bush v. Hughes, No. 1:08cv874-MHT, 2009 WL 2905734, at *5 (M.D. Ala. Sept. 8, 2009) (noting that the plaintiff had "provided enough factual allegations (of white male officers who engaged in similar conduct but who were not terminated)" for her "equal[-]protection claims charging race and gender discrimination . . . [to] survive the motion to dismiss").  Indeed, the Complaint is devoid of any factual allegations identifying any non-female, non-Caucasian, similarly-situated employees or suggesting how Davis treated these employees more favorably than Brown.[15]  For all the foregoing reasons, Brown has failed to state a claim as to Defendant Davis for violation of the Equal Protection Clause, and this claim is due to be dismissed without prejudice.

Davis also seeks dismissal of Brown's Complaint based upon qualified immunity. The Court recognizes that "[t]he Supreme Court has urged [courts] to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense

---

[15] The Court notes that although Brown fails to properly allege differential treatment of similarly-situated employees, allegations regarding comparators are not the only way to establish discriminatory intent in an employment discrimination case. See Chapter 7 Trustee, 683 F.3d at 1255 ("The McDonnell Douglas framework is not, however, the only way to use circumstantial evidence to survive a motion for summary judgment, and a 'plaintiff's failure to produce a comparator does not necessarily doom [her] case.'") (quoting Smith v. Lockheed-Martin, 644 F.3d 1321, 1328 (11th Cir. 2011)).  However, while Brown has alleged comments that may suggest discriminatory animus, her Complaint is, nevertheless, due to be dismissed because she has failed to allege any connection between Davis and the challenged employment action.

is immunity from suit and not from damages only." <u>Marsh v. Butler Cnty., Ala.</u>, 268 F.3d 1014, 1022 (citing <u>Hunter v. Bryant</u>, 112 S.Ct. 534, 536 (1991); <u>Mitchell v. Forsyth</u>, 105 S.Ct. 2806, 2815 (1985)).  However, because the Court has determined that Brown has failed to state a claim of unlawful discrimination against Davis at this time, it does not reach the question of whether Davis is entitled to the protection of qualified immunity based on the allegations of the Complaint.

## IV.   Leave to Amend

Despite the merit of the deficiencies identified by Davis in the Motion, Brown, who is represented by counsel, has made no request to amend her complaint. <u>See</u> <u>Wagner v. Daewoo Heavy Indus. Am. Corp.</u>, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").  However, in her Response, Brown has requested leave to amend should the Court find her Complaint deficient. <u>See</u> Response at 8-9.[16]   Therefore, in an

_____

[16] In her Response, Brown states that: "In the alternative, if the Complaint is not sufficient, Plaintiff respectfully requests that she be granted leave to amend her complaint." Response at 8-9 (citing Rule 15(a)(2)).  This is not a proper motion for leave to amend, and thus the request is not before the Court.  A request for affirmative relief, such as a request for leave to amend a pleading, is not properly made when simply included in a response to a motion or other responsive pleading. <u>See</u> Fed. R. Civ. P. 7(b); <u>see</u> <u>also</u> <u>Rosenberg v. Gould</u>, 554 F.3d 962, 965 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.")(quoting <u>Posner v. Essex Ins. Co.</u>, 178 F.3d 1209, 1222 (11th Cir. 1999)).

Moreover, even if it were proper to include a request for leave to amend in the Response, the request is otherwise due to be denied based upon Brown's failure to satisfy the requirement that "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." <u>Long v. Satz</u>, 181 F.3d 1275, 1279 (11th Cir. 1999); <u>see</u> <u>also</u> <u>McGinley v. Fla. Dep't of Highway Safety and Motor Vehicles</u>, 438 F. App'x 754, 757 (11th Cir. 2011)(affirming denial of leave to amend where plaintiff did not set forth the substance of the proposed amendment); <u>United States ex. rel. Atkins v. McInteer</u>, 470 F.3d 1350, 1361-62 (11th Cir. 2006) (same).  Thus, the Court will not entertain Brown's request for relief included in the Response.  If Brown wishes to file an amended complaint, she must file an appropriate motion seeking leave of Court to do so.

abundance of caution, the Court will permit Brown to request leave to file an amended complaint as to Defendant Davis, if she so chooses.  Before doing so, Brown must confer with opposing counsel in accordance with Rule 3.01(g),  Local Rules, United States District Court, Middle District of Florida.  Additionally, Brown is reminded that in the event she seeks leave to file an amended complaint, she must append her proposed amended complaint to any motion she files so that the Court may determine whether the requested amendment should be permitted.

### V.     Conclusion

Brown has failed to allege a cause of action upon which relief can be granted with respect to Count Three of the Complaint.  Because it is possible that this Count might be amended to state a cause of action, the Court will dismiss the claim without prejudice.  If she so chooses, Brown may seek leave to file an amended complaint to correct the deficiencies.  Accordingly, it is hereby **ORDERED**:

1.      Defendant Rudolph Davis's Motion to Dismiss (Doc. No. 21) is **GRANTED**. Count Three of the Complaint (Doc. No. 1) is **DISMISSED without prejudice**.

2.      If she chooses to do so, Brown may file a motion seeking leave to file an amended complaint consistent with this Order on or before **April 22, 2014**.

**DONE and ORDERED** at Jacksonville, Florida, this 28th day of March, 2014.

**MARCIA MORALES HOWARD**
United States District Judge

lc18

Copies to:

Counsel of Record